IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**PREMIER COMP SOLUTIONS LLC**, )
)
      Plaintiff, )
)
     v. ) 2:15cv703
) **Electronic Filing**
**UPMC**, a Pennsylvania nonprofit non-stock )
corporation, **UPMC BENEFIT MANAGEMENT** )
**SERVICES, INC.**, d/b/a UPMC )
WORKPARTNERS, **UPMC HEALTH** )
**BENEFITS, INC.**, d/b/a UPMC )
WORKPARTNERS, and **MCMC, LLC**, )
a wholly-owned subsidiary of York Risk )
Management, )
)
      Defendants. )

**MEMORANDUM OPINION**

February 7, 2019

**I.   INTRODUCTION**

Plaintiff, Premier Comp Solutions, LLC ("Premier" or "Plaintiff") initiated this action by filing a seven (7) count Complaint against Defendants, UPMC ("UPMC"), UPMC Benefit Management Services, Inc. ("UPMC-BMS"), UPMC Health Benefits, Inc.[1] ("UPMC-HB") (collectively the "UPMC Defendants"), and MCMC, LLC ("MCMC") (collectively the "Defendants") alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 *et seq.*, violation of Section 12 of the Clayton Act, 15 U.S.C. § 22, and common law Unfair Competition. Premier has filed a Motion *in Limine* to Exclude UPMC Expert Witness Dr. David Reitman (**Document No. 258**) and the UPMC Defendants have filed a Motion to Exclude the Testimony of Dr. Joseph P. Fuhr (**Document No. 272**). The parties have responded and the motions are now before the Court.

---

[1]   Both UPMC-BMS and UPMC-HB do business as UPMC WorkPartners ("WorkPartners"). Amended Complaint ("Am. Compl.") ¶¶ 17 & 18.

The UPMC Defendants identified Dr. David Reitman ("Dr. Reitman") as their economics expert, who intends to offer the following opinions:

1. Dr. Joseph P. Fuhr, Premier's expert witness, has failed to lay out a coherent theory of antitrust harm, including a failure to properly define relevant antitrust markets, to assess monopoly power, and to describe a theory of harm to competition.

2. UPMC does not have monopoly power or a dangerous probability of acquiring monopoly power in any of the relevant product markets identified by Plaintiff.

3. UPMC had neither the incentive nor the ability to monopolize those product markets or specifically to exclude Premier from those markets.

4. UPMC's actions at the core of Plaintiff's allegations of anticompetitive conduct, namely requesting additional information from Premier and switching from Premier to MCMC and Align for cost containment services, were done for procompetitive reasons: lowering costs and monitoring performance.

Premier argues that Dr. Reitman's opinions are without basis and are unreliable because Dr. Reitman lacks the knowledge, skill, experience, training, or education to render any opinion concerning the economic operation or incentives in the workers' compensation insurance or health care markets. Further, Premier contends that Dr. Reitman lacks the requisite expertise to provide an opinion concerning whether the theft of trade secrets from Premier had an anticompetitive effect in any of the relevant markets.

Premier identified Dr. Joseph P. Fuhr, Jr. ("Dr. Fuhr"), an economist with experience in analyzing antitrust issues in healthcare markets, as its expert. Dr. Fuhr produced a ten (10) page report which the UPMC Defendants contend "contains no relevant economic analysis, no acceptable methodology and no legitimate support for any of the few antitrust-related opinions expressed therein. Specifically, the UPMC argues that Dr. Fuhr's testimony must be excluded because:

(1) Dr. Fuhr failed to adequately define any plausible relevant product market based on data or analysis;

(2) The totality of Dr. Fuhr's geographic market definition opinion consists of one line: "The geographic market for each relevant product market is no larger than Western PA," but contains no citation, no theoretical or empirical support, and no methodology;

(3) Dr. Fuhr provides no analysis of whether UPMC has market or monopoly power;

(4) Dr. Fuhr failed to opine that PCS was substantially foreclosed from any market, one of the requirements necessary to establish PCS's claims; and

(5) Dr. Fuhr did not find any anticompetitive effects on the market as a whole, but only considered PCS's loss of WorkPartners' customers.

### III. DISCUSSION

The motions before the Court implicate the admissibility standard for expert witnesses under Rule 702 of the Federal Rules of Evidence as elucidated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court set forth parameters for determining when proffered expert testimony can be admitted into evidence. The Court held:

> Proposed testimony must be supported by appropriate validation -- *i.e.,* "good grounds," based on what is known. In short, the requirement that an expert's testimony pertaining to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert*, 509 U.S. at 590. The Court concluded that Rule 702 "clearly contemplates some degree of regulation of the subjects about which an expert may testify." 509 U.S. at 589. Thus, the Court established a "gatekeeping role for the judge." *Id.* at 597. The Court wrote:

> Faced with a proffer of expert scientific testimony, . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

3

*Id.* at 592-593. Moreover, the Third Circuit has established that Rule 702 includes "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." *United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001); *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

First, the witness must be a qualified expert, meaning that the witness must possess specialized expertise. *Feit v. Great-West Life & Annunity Ins. Co*., 460 F. Supp. 2d 632, 636 (D.N.J. 2006). Courts have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert. *In re TMI Litig.*, 193 F.3d 613, 664 (3d Cir. 1999).

Second, Rule 702 requires that the testimony be reliable. The Supreme Court instructed that an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995) (quoting *Daubert*, 509 U.S. at 590)). The Court emphasized, however, that the "focus . . . must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. The issue, therefore, is whether the evidence should be excluded because the flaw is large enough that the expert lacks good grounds for his or her conclusion. *In re Paoli R.R Yard PCB Litigation*, 35 F.3d at 746. Further, an "expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury." *Elcock v. Kmart Corp.*, 233 F.3d at 754.

*Daubert* identified several factors which a district court should take into account in evaluating whether a particular scientific methodology is reliable. *In re Paoli R.R Yard PCB Litigation*, 35 F.3d at 742. The factors that *Daubert* and the Third Circuit have declared important include: (1) whether a method consists of a testable hypothesis; (2) whether the

4

method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *In re Paoli R.R Yard PCB Litigation*, 35 F.3d at 742 n.8. *See also Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000), *cert. denied*, 532 U.S. 921 (2001); *Elcock v. Kmart Corp.*, 233 F.3d at 745-746; *In re TMI Litig.*, 193 F.3d 613, 664 (3d Cir. 1999).

*Daubert* makes clear that these factors do not constitute a "definitive checklist or test." *Daubert*, 509 U.S. at 593. A court's gatekeeping inquiry must be "tied to the facts" of a particular "case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). "Whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153.

Moreover, the court's role as a gatekeeper "is not intended to serve as a replacement for the adversary system." *See Crowley v. Chait*, 322 F. Supp. 2d 530, 536 (D. N. J. 2004) quoting FED. R. EVID. 702, Advisory Committee's Note. The *Daubert* Court recognized that jurors will have the capacity to distinguish "junk science" from the real thing. Accordingly, where an expert is expected to deliver "shaky" testimony, admission of the testimony may still be proper because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The Third Circuit further commented on the reliability notion of *Daubert*, stating:

> The evidentiary requirement of reliability is lower than the merits standard of correctness. Further, a court may determine that "good grounds" exist for the

5

> expert opinion to be offered, even though the judge may believe "better grounds" exist for an alternate conclusion or that a somewhat flawed methodology, if fixed, would lead to a different conclusion.

*Allstate Ins. Co. v. Hamilton Beach/Proctor-Silex, Inc.*, 2008 U.S. Dist. LEXIS 63355 *12 (W.D. Pa. Aug. 19, 2008) (citing *In re Paoli R.R Yard PCB Litigation*, 35 F.3d at 744).

Finally, the expert's testimony must "fit" or "be relevant for the purposes of the case and must assist the trier of fact." *Calhoun v. Yamaha Motor Corp.*, U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003)). The touchstone for admissibility under Rule 702, is helpfulness to the trier of fact. FED. R. EVID. 702 (a). However, while the standard for fitness is higher than bare relevance, it is not that high. *In re Paoli R.R Yard PCB Litigation*, 35 F.3d at 745. In order to assist the trier of fact in understanding the evidence or in determining an issue of fact, the scientific or other specialized knowledge must be logically connected to the questions at issue in the case. *Id.* at 742-743. In contrast, expert testimony based on assumptions that lack any factual support in the record are properly excluded. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002); *Elcock v. Kmart Corp.*, 233 F.3d at 756 n.13.

The proponent of the expert testimony bears the burden of establishing the reliability and admissibility of the expert's testimony by a preponderance of the evidence. *See Daubert*, 509 U.S. at 593 n. 10; *In re TMI Litig.*, 193 F.3d at 663. Moreover, Rule 702 embodies a liberal policy of admissibility. *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir. 2008); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 857 (3d Cir. 1990).

A. <u>Dr. Reitman</u>

Premier argues that Dr. Reitman is not qualified to offer expert opinions in this action because he lacks "appreciable background, experience or education" in the workers'

compensation and health care industries, as well as in the area of trade secrets. Specifically, Premier contends that Dr. Reitman lacks qualifications and expertise regarding:

> (1) the unique economic incentives built in the workers' compensation insurance industry and the specialized market for cost containment in the industry;
>
> (2) whether the misappropriation of trade secrets can constitute an antitrust violation; and
>
> (3) a vertically integrated health care organization which includes a health care provider and a workers' compensation cost containment entity.

Dr. Reitman is being presented by the UPMC Defendants as an expert in antitrust economics. He has a Master's Degree in Economics from Stanford University and a Ph.D. from Stanford in Decision Sciences, an interdisciplinary program that includes elements of both economics and operations management. Dr. Reitman was an Assistant Professor of Economics at Ohio State University for approximately nine (9) years, and he was employed as an economist at the Department of Justice Antitrust Division for ten (10) years. Moreover, while at the Department of Justice, Dr. Reitman worked on numerous cases involving health care products and health insurance, including insurer mergers and health insurance monopolization claims. Further, some of Dr. Reitman's cases at the Department of Justice involved vertical issues in the health care industry.

Dr. Reitman has testified on behalf of the Department of Justice in its successful lawsuit alleging that a company monopolized the market for denture teeth in the U.S. through the use of exclusionary conduct. *United States v. Dentsply International, Inc.*, 277 F. Supp. 2d 387 (D. Del. 2003), *rev'd and remanded*, 399 F.3d 181 (3d Cir. 2005). Dr. Reitman has also provided testimony, or has been retained as an expert in, other monopolization cases involving allegations of exclusionary conduct, including restrictions on dealers or other complementary service providers.

As set forth above, a qualified expert must possess specialized expertise. *Feit v. Great-West Life & Annunity Ins. Co*., 460 F. Supp. 2d 632, 636 (D.N.J. 2006). Courts have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert. *In re TMI Litig.,* 193 F.3d 613, 664 (3d Cir. 1999). While specialized knowledge is a requirement, the basis of such knowledge can be "practical experience as well as academic training and credentials." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 328 (3d Cir. 2002) (noting that the specialized knowledge requirement has been construed "liberally").

The Court finds, therefore, that Dr. Reitman is indeed qualified to opine on the issues involved in this matter. The Court agrees that experience in the workers' compensation insurance industry is of no moment. Dr. Reitman's academic qualifications and experience as an antitrust economist certainly gives him the ability to analyze the relevant antitrust market or markets at issue here. Further, Premier's contention that Dr. Reitman should be precluded from opining on whether certain information was a trade secret is without merit. In his antitrust analysis, Dr. Reitman accepts the premise that compilation of data, which Premier contends was misappropriated by the Defendants, were trade secrets. Dr. Reitman acknowledged that such a theft could, "under certain conditions," constitute an antitrust violation but opined that such circumstances were not present in this case.

Premier argues that Dr. Reitman's opinions are unreliable, based on speculation, because of his lack of appropriate qualifications and experience. This Court has found that Dr. Reitman is qualified as an antitrust economist and. therefore, Premier's contention is without merit. Accordingly, Premier's motion to exclude Dr. Reiman's testimony will be denied.

B. <u>Dr. Fuhr</u>

The UPMC Defendants do not challenge Dr. Fuhr's qualifications, but contend that his testimony must be excluded because Dr. Fuhr's report contains no relevant economic analysis, no acceptable methodology and no legitimate support for any of the few antitrust-related opinions he expresses.

The court's role as a gatekeeper "is not intended to serve as a replacement for the adversary system." *See Crowley v. Chait*, 322 F. Supp. 2d 530, 536 (D. N. J. 2004) *quoting* FED. R. EVID. 702, Advisory Committee's Note. The *Daubert* Court recognized that jurors will have the capacity to distinguish "junk science" from the real thing. Accordingly, where an expert is expected to deliver "shaky" testimony, admission of the testimony may still be proper because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The Third Circuit further commented on the reliability notion of *Daubert*, stating:

> The evidentiary requirement of reliability is lower than the merits standard of correctness. Further, a court may determine that "good grounds" exist for the expert opinion to be offered, even though the judge may believe "better grounds" exist for an alternate conclusion or that a somewhat flawed methodology, if fixed, would lead to a different conclusion.

*Allstate Ins. Co. v. Hamilton Beach/Proctor-Silex, Inc.*, 2008 U.S. Dist. LEXIS 63355 *12 (W.D. Pa. Aug. 19, 2008) (citing *In re Paoli R.R Yard PCB Litigation*, 35 F.3d at 744). A district court is not obligated to accept an expert's legal conclusion, *Dalberth v. Xerox Corp.*, 766 F.3d 172, 189 (2d Cir. 2014), nor should a court "impermissibly weigh[]" expert evidence by picking out "potential flaws." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1241 (3d Cir. 1993).

Premier argues that Dr. Fuhr's expert report is not as lengthy or detailed as the

9

report of the UPMC Defendant's expert, however neither the brevity of the Dr. Fuhr's report, nor his arguably limited or summary-like opinions, require that his testimony be excluded. Dr. Fuhr should be allowed to testify based on his extensive relevant experience and his commonsense application of his expertise to the issues in dispute. Moreover, Premier contends that, because of Dr. Fuhr's training and experience as a health care economist, his testimony will be helpful to the jury.

The Court, having read Dr. Fuhr's report, finds it to be a rather elementary, commonsense approach to matters at issue in this case. Such approach will be helpful to the jury in understanding certain aspects of the litigation, though it may do little in helping Premier prove the elements required to establish an antitrust violation. The Court agrees that the report lacks empirical data, however, we cannot say that Dr. Fuhr's opinions are not based on "good grounds" nor can his report be labeled "junk science."

Ultimately, Dr. Fuhr must defend his opinions under cross-examination, the presentation of the opinions of Dr. Reitman, and this Court's instruction on the elements of antitrust law and the burden of proof. The perceived failings of Dr. Fuhr's report are real, however, they do not rise to a level that requires exclusion. The motion to exclude Dr. Fuhr's testimony will be denied.

An appropriate Order follows.

Cercone, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PREMIER COMP SOLUTIONS LLC**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15cv703 |
| | ) | **Electronic Filing** |
| **UPMC**, a Pennsylvania nonprofit non-stock corporation, **UPMC BENEFIT MANAGEMENT SERVICES, INC.**, d/b/a UPMC WORKPARTNERS, **UPMC HEALTH BENEFITS, INC.**, d/b/a UPMC WORKPARTNERS, and **MCMC, LLC**, a wholly-owned subsidiary of York Risk Management, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### ORDER OF COURT

AND NOW, this 7th day of February, 2019, upon consideration of the Motion *in Limine* to Exclude UPMC Expert Witness Dr. David Reitman (**Document No. 258**) filed on behalf of Plaintiff and the Motion to Exclude the Testimony of Dr. Joseph P. Fuhr (**Document No. 272**) filed on behalf of the UPMC Defendants, the responses thereto, and the briefs filed in support thereof, in accordance with Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that Plaintiff's motion to exclude Dr. Reitman is **DENIED**. The UPMC Defendants' motion to exclude Dr. Fuhr is also **DENIED**.

s/ DAVID STEWART CERCONE<br>
David Stewart Cercone<br>
United States District Judge

cc: Stanley M. Stein, Esquire
      Jeffrey S. Jacobovitz, Esquire
      Daniel K. Oakes, Esquire

Richard B. Dagen, Esquire
Peter S. Wolff, Esquire
Thomas G. Rohback, Esquire
Curtis M. Schaffner, Esquire
Paul S. Mazeski, Esquire
Stephenie G. Anderson, Esquire

(*Via CM/ECF Electronic Mail*)